IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| **BRIDGETTE DIANE HOWARD,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:20-CV-304 |
| | § | |
| **COMMISSIONER OF SOCIAL SECURITY,** | § § § | |
| | § | |
| **Defendant.** | § | |

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

The Plaintiff, Bridgette Diane Howard ("Howard"), requests judicial review of a final decision of the Commissioner of Social Security Administration with respect to her application for disability-based benefits. This action is before the undersigned magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.[1] The undersigned finds that the administrative law judge's decision lacks substantial evidence, and therefore recommends remanding the decision denying benefits.

### I. JUDICIAL REVIEW

United States district courts may review decisions of the Commissioner of the Social Security Administration. 42 U.S.C. § 405(g) (2020). The scope of judicial review is limited, however, to determining whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). When the Commissioner applies proper law and his decision is supported by substantial evidence, the Commissioner's findings are

---

[1] General Order 05-06 refers civil proceedings involving appeals from decisions of the Commissioner of Social Security Administration to magistrate judges serving the divisions where the cases are filed. *See also* 28 U.S.C. § 636(b)(1)(B) (2009) and E.D. TEX. CIV. R. CV-72 for the Assignment of Duties to United States Magistrate Judges.

conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g).

Reviewing courts, therefore, give the Commissioner's decisions great deference. *Leggett,* 67 F.3d at 564. Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Commission*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). Rather, it is for the Commissioner to weigh evidence and resolve conflicts. *See Anthony*, 954 F.2d at 295; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

When the Commissioner fails to apply correct principles of law, or when "substantial evidence"[2] does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. *See* 42 U.S.C. 405(g). Thus, courts have power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing. Ordinarily, courts remand for further administrative proceedings to address and cure deficiencies. *See, e.g., Newton v. Apfel*, 209 F.3d 448, 460 (5th Cir. 2000).

---

[2] "Substantial evidence" is a term of art meaning "more than a mere scintilla." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). Evidence is "substantial" when it is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Biestek,* 139 S. Ct. at 1154*; Richardson*, 402 U.S. at 401; *Marcello v. Bowen*, 803 F.2d 851, 853 (5th Cir. 1986).

## II. BACKGROUND

A.   Procedural History

Howard applied for disability insurance benefits in May 2018, alleging an onset date of November 22, 2015, due to idiopathic thrombocytopenia purpura, interstitial cystitis, a twisted colon, and forgetfulness. (Tr. 66, 199.) Her claim was denied initially on August 6, 2018, and upon reconsideration on November 27, 2018. (Tr. 86, 94, 104.) Howard timely requested a hearing, and one was held before Administrative Law Judge ("ALJ") Thomas J. Helget on August 9, 2019. (Tr. 40-66.) At the hearing, she amended her alleged onset date to September 28, 2016. (Tr. 15, 61.)

ALJ Helget issued a decision denying Howard's application on October 2, 2019. (Tr. 15-33.) Howard requested review of the ALJ's decision by the Appeals Council, which was denied on May 8, 2020, thereby prompting this appeal. (Tr. 1-4.)

B.   Factual History

Howard was 53 years old at her date of last insured. (Tr. 66.) She reported a GED education and past relevant work as a home health aide. (Tr. 60, 221.)

C.   Administrative Decision and Appeal

ALJ Helget utilized the five-step sequential analysis model specified by regulations and approved by courts in reaching his decision denying Howard's application.[3] At step one, ALJ

---

3   Pursuant to 20 C.F.R. § 404.1520(a)-(f), the five steps are generally as follows:

> 1. The Commissioner ascertains *whether an applicant currently engages in substantial gainful activity*. (If so, a finding of non-disability is entered, and the inquiry ends.)
> 2. The Commissioner determines *whether an applicant has a severe impairment or combination of impairments.* (If not, the inquiry ends, and a finding of non-disability is entered.)
> 3. The Commissioner determines *whether any severe impairment(s) equals or exceeds those in a Listing of Impairments, 20 C.F.R. Subpt. P, Appendix 1* ("the Listings"). (If so, disability is presumed, and benefits are awarded. If not, the analysis continues.)
> 4. The Commissioner determines *whether any impairment(s) prevents the claimant from engaging in regular previous employment*. (If so, a *prima facie* case of disability is established and the burden of going forward (to the fifth step) shifts to the Commissioner. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).

Helget found that Howard had not engaged in substantial gainful activity during the relevant period. (Tr. 17.) At step two, he found that she had the "severe" impairments of idiopathic thrombocytopenia, osteoarthritis of the shoulders and knees, interstitial cystitis, fibromyalgia, myositis, lumbar degenerative disc disease, cervical spondylosis, heart disease, cognitive impairment, depression, and anxiety. (Tr. 17-18.) ALJ Helget concluded that her other alleged or identified conditions, including gastritis, carpal tunnel, hypokalemia, lipids, hypertension, skin rash, leukopenia, thyroid, and headache were not severe impairments. (Tr. 18-19.) At step three, he found that Howard's impairments did not meet or equal the criteria of an impairment listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1, under which disabled status would be presumed. (Tr. 19-23.) In assessing residual functional capacity ("RFC"), ALJ Helget found that Howard could perform light work, with the following limitations:

> occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. With her bilateral upper extremities, the claimant could only occasionally reach overhead. The claimant was limited to performing simple, routine, and repetitive tasks, requiring no more than one-, two-, or three-step instructions, not performed in a fast-paced production environment, involving only simple, work-related decisions, and, in general, relatively few work place changes in a routine work setting.

(Tr. 23-29.) At steps four and five, ALJ Helget found that Howard could not perform her past relevant work as a home health aide, but could perform other work in the national economy, including the jobs of mail sorter, garment sorter, and office helper. (Tr. 29-31; 61-64.) Accordingly, ALJ Helget found that Howard was not under a "disability" for purposes of the Act during the relevant period and denied her application for benefits. (Tr. 31-32.)

---

5. The Commissioner determines *whether other work exists in the national economy which the applicant can perform*. (If so, the burden shifts back to the applicant to show he cannot perform the alternative labor. *See id.*; *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).

## III. POINT OF ERROR AND RESPONSE

Howard argues that ALJ Helget's RFC determination is unsupported by substantial evidence as it was created without guidance from any medical professional, citing to *Ripley v. Chater*, 67 F3d 552 (5th Cir. 1995). Essentially, Howard claims that an ALJ cannot concoct an RFC based on a lay review of the evidence when the condition involves complex medical issues like cognitive impairments and fibromyalgia.[4] In response, the Commissioner argues that Howard's point of error relies on previous legal framework of medical opinion evidence, which was abrogated by the 2017 regulatory amendments that bar administrative fact finders from granting either deference or specific evidentiary weight to medical opinion evidence. 20 C.F.R. § 404.1520c(a). The Commissioner's response is misguided—it focuses on the ALJ's alleged legal error (which was not raised in Howard's briefing) and fails to address the relevant claim challenging the sufficiency of the evidence supporting the ALJ's mental RFC assessment.

## IV. EVIDENCE

Howard's evidentiary transcript is extensive and consists of two volumes with nearly 1,900 total pages. Most of her medical records relate to treatment for physical impairments and routine medical care. (*See, e.g.,* treatment at the University of Texas Medical Branch for poor bowel function (Tr. 1312-1503, 1595-1792); routine health care from primary doctor Manesh Patel, M.D. for screenings, bloodwork, fatigue, and decreased range of motion (Tr. 556-828, 935-1111); and treatment from Southeast Texas Medical Associates for decreased range of motion and pain management (850-934, 1163-1276, 1277-1302), *inter alia*.) Scattered throughout the medical record are many subjective notations from treating doctors describing Howard's affect,

---

[4] Because the undersigned finds that the case should be remanded based on insufficient evidence to support the ALJ's mental RFC findings, Howard's appeal as it relates to the fibromyalgia evidence is not addressed. The Commissioner should review the point of error on remand to determine whether further development of the record is necessary.

memory, and/or cognitive abilities on physical exam. These remarks are generalized, brief, and lack the support of any objective psychological or psychiatric tests. (*See, e.g.,* November 2016 treatment note from urologist finding her to be well oriented to time and place, normal mood, and not appearing to be depressed (Tr. 429); June 2018 family doctor treatment note that she appears alert and cooperative, with normal mood, affect, attention, and concentration (Tr. 675); August 2018 treatment note from orthopedist that she is cooperative, appropriate mood and affect, memory intact, and judgment intact (Tr. 1005); January 2019 treatment note from urologist stating she appeared with normal mood and affect (Tr. 1413, 1769)).[5]

Of the hundreds of pages of medical records, Howard's transcript contains only *one* record from a treating psychologist or psychiatrist that relates specifically to her alleged mental impairment. On November 28, 2018, Howard presented for an evaluation with James A. Duncan, Ph.D., seemingly on referral from her treating doctor for "psychological assessment" based on reports of deteriorating memory and chronic pain. (Tr. 1124, 1128.) Dr. Duncan administered a battery of objective tests to assess her I.Q., memory, depression, and cognitive ability. (Tr. 1124.) Dr. Duncan's 6-page report states that Howard reported she cared for her father's step-children when she herself was a child, and still resented having to care for children that were not hers. (Tr. 1125.) She reported being kidnapped at gunpoint and sexually assaulted at twelve years old and threatened at gunpoint during a robbery just a few years afterwards. (Tr. 1125.) Dr. Duncan noted that Howard was "pleasant" but generally "quiet and engaged minimally," had normal speech, but her mood appeared depressed, with a blunted affect. (Tr. 1126.)

---

[5] Some, but not all, of these records were reviewed by Mark Schade, Ph.D., a state agency medical consultant who evaluated Howard's mental functioning in August 2018. Dr. Schade concluded that the record contained insufficient evidence to substantiate the presence of a mental disorder. (Tr. 70, 81.) In fact, Dr. Schade did not even complete an evaluation of Howard's "paragraph B" criteria, which is used at step two to determine whether the severity of a claimant's impairment meets or equals a Listing, and measures understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace, or adapting or managing by themselves.

FSIQ testing produced an IQ of 74, putting her in the borderline range category.[6] (Tr. 1126.) Auditory working memory and visual perception were both borderline, and her weakest performance was on visual processing. (Tr. 1126.) Dr. Duncan noted that it was reasonable that she sounded more capable than she actually was, and that her educational levels were weaker than her GED would suggest since she functions with a ninth grade reading, seventh grade sentence comprehension, fourth grade math computation, and sixth grade spelling equivalent. (Tr. 1126-1127.) Dr. Duncan indicated that Plaintiff's cognitive status was "tempered" by recognition that she currently experiences clinically "significant levels of depression and anxiety." (Tr. 1129.) Dr. Duncan noted that Howard perceives her memory as significantly worse since losing her home in Hurricane Harvey and would also likely suffer from stress related somatic complaints. (Tr. 1129.) ALJ Helget found Dr. Duncan's statements "overall persuasive." (Tr. 29.)

The record is devoid of evidence from a treating, examining, or consultative medical source who has reviewed or assessed the impact of Howard's mental impairments on her ability to work.

## V. DISCUSSION AND ANALYSIS

If a mental impairment is severe but does not meet or equal a listed mental impairment, the ALJ must then conduct an RFC assessment at step four.[7] 20 C.F.R. § 404.1520a(d)(3) (2017). In determining a claimant's RFC, an ALJ may not—without medical experts' opinions—determine the applicant's RFC solely from evidence of his claimed medical conditions. *Ripley*, 67 F.3d at 557. The ALJ also may not rely on his own unsupported opinion of the limitations the applicant's medical conditions might present. *Id.*; *see also Frank v. Barnhart*, 326 F.3d 618, 622

---

[6] Borderline intellectual functioning is defined as an IQ score within the 71–84 range. *See Diagnostic & Statistical Manual of Mental Disorders*, 32 (4th ed. Am. Psychiatric Ass'n 1994).

[7] By regulation, the Commissioner informs applicants that RFC means "what you can still do despite your limitations." 20 C.F.R. § 416.945 (2012).

(5th Cir. 2003) (warning an ALJ "must be careful not to succumb to the temptation to play doctor," as "lay intuitions about medical phenomena are often wrong"). Instead, the ALJ should request a "medical source statement" describing types of work the claimant is still capable of performing despite his condition. *Ripley*, 67 F.3d at 557. Absent such a statement, there is typically insufficient evidence to support an RFC determination. *Id*. at 557-58 (remanding the case with instructions to obtain a report from a treating physician regarding effects of the plaintiff's condition on his ability to work).[8]

As to her nonexertional impairments.[9] ALJ Helget concluded that Howard has the RFC to perform a limited range of light work except she is limited to performing simple, routine, and repetitive tasks; tasks that require no more than one-, two-, or three-step instructions; tasks not performed in a fast-paced production environment; tasks involving only simple, work-related decisions; and, in general, relatively few workplace changes in a routine work setting. (Tr. 23.)

Howard raises a *Ripley* challenge and argues that because the mental RFC is not supported by a medical opinion that links mental impairment to functional ability, it lacks the support of substantial evidence. (Doc. No. 17, p. 8.) In *Ripley*, the claimant argued that the ALJ failed to develop the record fully and fairly by finding that he could perform sedentary work even though there was no medical testimony to support that conclusion. *Ripley*, 67 F.3d at 552. The Fifth Circuit noted that although an ALJ should usually request a medical source statement describing the types of work that the applicant was still capable of performing, the absence of such a statement did not necessarily make the record incomplete. *Id.* Rather, the court had to consider

---

[8] "Medical source" is a term of art that includes treating, examining, and consultative resources. 20 C.F.R. § 404.1502.

[9] Non-exertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength, *i.e.*, all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions, including an individual's abilities to perform physical activities such as postural (*e.g.*, stooping, climbing), manipulative (*e.g.*, reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (*e.g.*, understanding and remembering instructions and responding appropriately to

whether there was substantial evidence in the record to support the ALJ's decision. *Id.* The record contained "a vast amount of medical evidence" establishing that the claimant had a back problem, but it did not clearly establish the effect of that problem on his ability to work. *Id.* The Fifth Circuit found that the ALJ's RFC determination was therefore not supported by substantial evidence, so the court remanded the case with instructions to the ALJ to obtain a report from a treating physician. *Id.* at 557–58. Notably, the Fifth Circuit rejected the Commissioner's argument that the medical evidence discussing the extent of the claimant's impairment substantially supported the ALJ's RFC assessment, finding that it was unable to determine the effects of the claimant's condition on his ability to work absent reports from qualified medical experts. *Id.* at 558 n.27; *see also Browning v. Barnhart*, No. 1:01-CV-637, 2003 WL 1831112, at *7 (E.D. Tex. Feb. 27, 2003).

      The Fifth Circuit reiterated in *Salmond* that "[t]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." *Salmond v. Berryhill*, 892 F.3d 812, 818 (5th Cir. 2018). Courts have consistently ruled in favor of Howard's position on this issue where the ALJ's RFC finding has no medical opinion supporting the limitations found by the ALJ. *See Branch v. Saul*, No. 3:19-CV-6-BN, 2020 WL 1529001, at *5 (N.D. Tex. Mar. 31, 2020) ("The court concludes that the final decision of the Commissioner is not supported by substantial evidence because the ALJ made the RFC assessment without a medical opinion addressing the effects of Plaintiff's back impairments on his ability to work."); *Sendejas v. Berryhill*, No. 3:16-CV-1636-BF, 2017 WL 1649898, at *4 (N.D. Tex. May 1, 2017) ("Because the ALJ may not make a RFC determination where there is no medical opinion addressing the effects of Plaintiff's mental impairment on her ability to perform work-related activities, the ALJ's decision is not supported by substantial

---

supervision). *Id.*

evidence."); *Tyler v. Colvin*, No. 3:15-CV-3917-D, 2016 WL 7386207 (N.D. Tex. Dec. 20, 2016) (finding that an ALJ impermissibly relied on his own medical opinion to develop his RFC determination); *Geason v. Colvin*, No. 3:14-CV-1353-N, 2015 WL 5013877, at *5 (N.D. Tex. July 20, 2015) ("Because the ALJ erred in making an RFC determination without medical evidence addressing the effect of Plaintiff's impairment on her ability to work, the ALJ's decision is not supported by substantial evidence."); *Turner v. Colvin*, No. 3:13-CV-1458-B (BF), 2014 WL 4555657, at *5 (N.D. Tex. Aug. 29, 2014) (no substantial evidence supported the effects of Plaintiff's condition on her ability to work where the ALJ rejected all of the medical source opinions); *Medendorp v. Colvin*, No. 4:12-CV-687-Y, 2014 WL 308095, at *6 (N.D. Tex. Jan. 28, 2014) (finding because the ALJ rejected the only medical opinion in the record that explained the effects of the claimant's impairments on her ability to perform work, there was no medical evidence supporting the ALJ's RFC determination); *Nesbitt v. Colvin*, No. 3:12-CV-98-BN, 2013 WL 5299261, at *6 (N.D. Tex. Sept. 20, 2013) (case remanded for lack of substantial evidence where ALJ rejected doctor's opinion and GAF score of 43 and instead found plaintiff capable of simple work based upon non-mental health records and plaintiff's daily activities); *Johnson v. Astrue*, No. 3:12-CV-4175-BK, 2013 WL 3297594, at *5 (N.D. Tex. July 1, 2013) ("While the ALJ may choose to reject Dr. Yeatts's and Dr. Popma's opinions, she cannot then independently decide the effects of Plaintiff's mental impairments on his ability to perform work-related activities, as that is expressly prohibited by *Ripley*."); *Shugart v. Astrue*, No. 3:12-CV-1705-BK, 2013 WL 991252, at *5 (N.D. Tex. Mar. 13, 2013) (court reversed and awarded benefits where ALJ rejected the only doctor's opinions regarding plaintiff's limitations from mental impairments and independently decided that plaintiff could perform simple, unskilled work); *Davis v. Astrue*, No. 1:11-CV-00267-SA-JMV, 2012 WL 6757440 (N.D. Miss. Nov. 6, 2012) ("In formulating a claimant's RFC, the ALJ—a layperson—may not substitute his own judgment for that of a

physician."), *adopted by* 2013 WL 28068 (N.D. Miss. Jan. 2, 2013); *Browning v. Barnhart*, No. 1:01-CV-637, 2003 WL 1831112, at *7 (E.D. Tex. Feb. 27, 2003) (finding despite the fact that there was a vast amount of treating sources' medical evidence in the record establishing that plaintiff suffered from certain impairments, including voluminous progress reports, clinical notes, and lab reports, "none [made] any explicit or implied reference to effects these conditions h[ad] on claimant's ability to work" and the ALJ could not rely on that "raw medical evidence as substantial support for" the claimant's RFC).

Although Howard's transcript is extensive, there is nothing in the medical record that links her mental impairment to her functional ability to work. Accordingly, the undersigned finds that ALJ Helget's mental RFC assessment lacks the evidentiary basis required under *Ripley*. *Cary G. T. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-CV-1948-BK, 2022 WL 954341, at *3 (N.D. Tex. Mar. 29, 2022) (remanding case where the "conspicuous absence of credible evidentiary choices" does not substantiate an RFC determination); *Jim S. v. Saul*, No. 3:18-CV-2179-BH, 2019 WL 4694943, at *9 (N.D. Tex. Sept. 25, 2019) (Ramirez, J.) (citing *Browning*, 2003 WL 1831112 at *7) (finding that despite the voluminous progress reports, clinical notes, and lab reports in evidence, "none [made] any explicit or implied reference to the effects these conditions h[ad] on claimant's ability to work" and the ALJ could not rely on that "raw medical evidence as substantial support for" the claimant's RFC).

When an ALJ commits a *Ripley* error, remand "is appropriate only if [Plaintiff] shows that he was prejudiced." *Ripley*, 67 F.3d at 557. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Id.* at 558, n.22.

The evidence shows that Howard suffered from mental impairments that, at least in some respect, affect her ability to work, and a medical opinion regarding her functional limitations

-11-

might have led to a different decision. *See Johns*, 2015 WL 1428535 at *20 (finding that the ALJ could have reached a different disability determination had she fully developed the record and obtained an expert medical opinion regarding the effects of the plaintiff's impairment on his ability to work). ALJ Helget was not entitled to simply rely on his own opinion of the medical evidence to determine the effects of Howard's mental impairments on her ability to work. *Coffelt v. Berryhill,* No. 4:17-CV-00165-Y-BP, 2017 WL 6508993, at *5 (N.D. Tex. Nov. 1, 2017), *R. & R. adopted*, No. 4:17-CV-165-Y, 2017 WL 6498009 (N.D. Tex. Dec. 19, 2017) (citing *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009). ALJ Helget should have obtained an expert medical opinion regarding the types of work Howard can perform, given her impairments. *Ripley*, 67 F.3d at 557. Moreover, even where consulting a medical expert is discretionary, an ALJ is under an affirmative duty to develop the record fully, and where an ALJ's failure to do so results in prejudice to a claimant, remand is warranted. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000).

## V. RECOMMENDATION

In this case, no treating, examining, or consultative resource reviewed the effect of Howard's mental impairments on her ability to work. The undersigned recommends remanding the case based upon lack of substantial evidence supporting the mental RFC found by the ALJ. *See Williams*, 355 F. App'x at 832 n.6 ("An ALJ may not–without the opinions from medical experts–derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions, [and] an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions.")).

Upon remand, the ALJ should obtain an assessment of Howard's mental impairment limitations by a competent mental health professional to assist in reaching a conclusion as to the effect of her ability to work in light of the mental impairments recognized by the ALJ and

supported by the medical record.

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation. Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2). A party who objects to this report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1) (2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 28th day of June, 2022.

_____
Zack Hawthorn
United States Magistrate Judge